IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRCT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| VINCENT EALOM, | ) CASE NO. 1:24-CV-00891-JDG |
| Plaintiff | ) |
| | ) MAGISTRATE JUDGE |
| vs. | ) JONATHAN D. GREENBERG |
| | ) |
| UNIVERSITY CIRCLE POLICE DEPARTMENT, *et al.*, | ) |
| | ) **MEMORANDUM OF OPINION &** |
| Defendants. | ) **ORDER** |
| | ) |

This matter is before the Court on consent of the parties pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1. (Doc. No. 9.) Before the Court is a Motion for Summary Judgment filed by Defendants Judson Park (incorrectly identified as Judson Manor/Judson Senior Living Communities), Glover Roston, and James Hairston (collectively, the "Judson Defendants"). (Doc. No. 25.) Plaintiff filed a Brief in Opposition (Doc. No. 30) and the Judson Defendants filed a Reply. (Doc. No. 31.)

For the following reasons, the Court GRANTS the Judson Defendants' Motion for Summary Judgment and dismisses all claims with prejudice.[1]

---

[1] After considering judicial economy, convenience, and fairness to the litigants, the Court is exercising supplemental jurisdiction over the state law claims because the claims derive from a common nucleus of operative fact, and the claims are such that they would be expected to be tried in one judicial proceeding. *Basista Holdings, LLC v. Ellsworth Twp.*, 710 F. App'x 688, 693 (6th Cir. 2017); *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997); 28 U.S.C. § 1367(a)).

1

## I.     FACTUAL BACKGROUND

On the evening of October 2, 2022, Plaintiff, Vincent Ealom ("Plaintiff" or "Ealom") was arrested. (Doc. No. 1-3, Pl. Compl. ¶ 1.) Ealom observed people following him so he ran to Judson Park because he knew there was a security guard. (Doc. No. 25-1, Ealom Dep. Tr. at 24, 27.) Ealom had never been to Judson Park before October 2, 2022. (*Id*. at 31.) Judson Park has two sets of doors. (*Id*. at 34-35.) Ealom entered the first set of doors, which opened automatically. (*Id*. at 72.) Ealom tried to enter the facility by prying open the second set of sliding doors. (Doc. No. 24, Tr. of Crim. Proceedings at 134.) Ealom was "knocking on there hard" to gain entry. (Doc. No. 25-1, Ealom Dep. Tr. at 35.) James Hairston ("Hairston"), the security guard at the lobby desk, allowed Ealom into the building. (Doc. No. 24, Tr. of Crim. Proceedings at 135.) Upon entry, Ealom told Hairston someone was chasing him. (*Id*. at 134.) Hairston did not see anyone behind Ealom. (*Id*. at 135.)

Once inside, Ealom's erratic behavior and his attempt to access the facility elevators that led to the residents, prompted Judson Park's employees to ask Ealom to leave the facility multiple times. (Doc. No. 20-3 at 6:40; Doc. No. 24, Tr. of Crim. Proceedings, pp. 134-39.) Ealom refused to leave and again attempted to access the elevator leading to residential areas. (Doc. No. 20-3, at 7:00.) Judson Park's security officers, Hairston and Glover Roston ("Roston"), restrained Ealom until police arrived. (*Id*. at 9:00-16:23.) Ealom testified that he was punched, elbowed, choked, and laid on by Judson Park security, causing him to lose consciousness. (Doc. No. 25-1, Ealom Dep. Tr. at 85-86.) University Circle police arrived and evaluated the situation. (Doc. No. 24, Tr. of Crim. Proceedings, pp. 196-97.) University Circle police handcuffed Ealom, and at his request, transported him to the emergency room via ambulance for minor injuries. (Doc. No. 1-3, ¶ 3.)

## II. PROCEDURAL BACKGROUND

A Cuyahoga County Grand Jury indicted Ealom on four counts: aggravated burglary (R.C. § 2911.11(A)(1)); burglary (R.C. § 2911.12(A)(1)); burglary (R.C. § 2911.12(B)); and criminal damaging, (R.C. § 2909.06(A)(1)). (Doc. No. 25-3.) On April 13, 2023, Ealom went to trail on the four counts. (Doc. No. 1-3, ¶ 7.) The jury found him not guilty of one count of burglary and the court acquitted Ealom of the remaining counts pursuant to Rule 29 of the Ohio Rules of Criminal Procedure. (*Id*.)

On April 10, 2024, Plaintiff filed a Complaint in the Cuyahoga County Court of Common Pleas alleging Count One: Malicious Prosecution, Count Two: 42 U.S.C. § 1983 (hereinafter, "Section 1983") for violation of Plaintiff's First, Fourth, and Fourteenth Amendment rights, and Count Three: Respondeat Superior. (Doc. No. 1-3.) Because Plaintiff asserted federal claims, Defendants removed the case to this Court on May 20, 2024. (Doc. No. 1.) On June 20, 2024, pursuant to 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties consented to the jurisdiction of the undersigned Magistrate Judge. (Doc. Nos. 8, 9.) On January 10, 2025, the Judson Defendants filed a Motion for Summary Judgment. (Doc. No. 25.) On February 10, 2025, Plaintiff filed his Brief in Opposition to the Judson Defendants' Motion. (Doc. No. 30.) On February 21, 2025, The Judson Defendants filed a Reply in Support of their Motion for Summary Judgment. (Doc. No. 31.)

## III. LAW AND ANALYSIS

### A. Standard of Review

Summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed.R.Civ.P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed.R.Civ.P. 56(c)(1)(A), (B).

A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Lansing Dairy*, 39 F.3d at 1347. This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass 'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52, 106 S.Ct. 2505).

4

**B. Analysis**

**1. Claims Pursuant to 42 U.S.C. § 1983**

In his Complaint, Ealom asserts that his First, Fourth, and Fourteenth Amendment rights were violated. (Doc. No. 1-3, at p. 7.) Ealom claims he was denied "constitutional rights to freedom of speech, freedom of association, freedom from false prosecution, protected under the first, fourth, and fourteenth amendments to the United States Constitution." (*Id*. at ¶ 12) Ealom alleges:

> Defendants are liable under 42 U.S.C. section 1983 for their deprivation and violation of plaintiff's first, fourth and fourteenth amendment rights. During the unjust and unconstitutional prosecution of plaintiff, defendants acted to deny plaintiff his right to free speech, right to free association, right to be free from prosecution without probable cause, and the right to not be subjected to malicious misconduct on the part of the defendants.

(*Id*. at ¶ 14.)

The Judson Defendants assert Ealom's First, Fourth, and Fourteenth Amendment claims fail as a matter of law because the Judson Defendants were not acting under color of law, so there are no Constitutional violations. (Doc. No. 25 at 11.) The Judson Defendants claim Plaintiff cannot proceed under a theory of 42 U.S.C. § 1983 liability against a private party unless that private party is considered a state actor for purposes of Section 1983, and that the Judson Defendants are not state actors under any of the three applicable tests. (*Id*. at 11-12.)

In response, Ealom argues the Judson Defendants are not entitled to summary judgment on his Section 1983 claim because there is a genuine issue of material fact as to whether Ealom was arrested and prosecuted without probable cause and whether he suffered an unconstitutional seizure of his person and loss of his freedom. (Doc. No. 30 at pp.8-9.) Ealom argues Judson's security guards exercised powers traditionally exclusively reserved to the state by holding Ealom until University Circle police arrived,

5

meeting the public function test for determining whether a private party is considered a state actor. (*Id*. at p. 10.)

In their Reply Brief, the Judson Defendants argue the public function test requires a historical analysis by the plaintiff to determine whether the private actor engaged in actions that were traditionally reserved for the state, which Ealom did not do. (Doc. No. 31 at 7-8.) The Judson Defendants state that security guards may be considered state actors under the public function test if they are "endowed by law with plenary powers such that they are *de facto* police officers", which is not the case here (*Id*. at 8, citing *Romanski v. Detroit Entertainment, LLC*, 428 F.3d 629, 637 (6th Cir. 2005)).

Under Section 1983, a plaintiff must show that he was deprived of a right secured by the Constitution or federal law, by someone acting "under color of state law." 42 U.S.C. § 1983; *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978); *Chapman v. Higbee Co.,* 319 F.3d 825, 833 (6th Cir.2003) (*en banc*); *Wolotsky v. Huhn,* 960 F.2d 1331, 1335 (6th Cir.1992). A private actor acts under color of state law when its conduct is "fairly attributable to the state." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 947, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). "The Supreme Court has developed three tests for determining the existence of state action in a particular case: (1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test." *Chapman,* 319 F.3d at 833 (citing *Wolotsky,* 960 F.2d at 1335). *See West v. Atkins,* 487 U.S. 42, 49–50, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (public function); *Flagg Bros.,* 436 U.S. at 157, 98 S.Ct. 1729 (same); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 170, 90

S.Ct. 1598, 26 L.Ed.2d 142 (1970) (state compulsion test); *Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 721–26, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) (symbiotic relationship or nexus test).

The parties agree that the public function test applies here.[2] "In order for a private actor to be deemed to have acted under color of state law, it is not enough to show that the private actor performed a public function." *Durante v. Fairlane Town Ctr.,* 201 F. App'x 338, 341 (6th Cir. 2006), citing *Rockwell v. Cape Cod Hosp.,* 26 F.3d 254, 258 (1st Cir.1994). Instead, the private actor must perform a public function which has traditionally *and* exclusively been reserved to the State. *Id*. (emphasis original), citing *Jackson v. Metro. Edison Co.,* 419 U.S. 345, 352, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). "This test is difficult to satisfy." *Id*. Many functions have been traditionally performed by governments, but very few have been exclusively reserved to the State. *Id*., citing *Gallagher v. Neil Young Freedom Concert,* 49 F.3d 1442, 1456 (10th Cir.1995) (internal quotations omitted); *see also Chapman,* 319 F.3d at 833–34 (explaining that "the public function test has been interpreted narrowly"). "Only functions like holding elections, exercising eminent domain, and operating a company-owned town fall under this category of state action." *Chapman,* 319 F.3d at 833–34 (internal citations omitted). In short, "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *West v. Atkins,* 487 U.S. 42, 52 n. 10, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (internal quotations omitted).

The Sixth Circuit has held that private security officers act under the color of state law where they are "endowed by law with plenary police powers such that they are *de facto* police officers." *Romanski v. Detroit Entm't, L.L.C.*, 428 F.3d 629, 637 (6th Cir.2005). Generally, this requires two things: (1) that a

---

[2] Plaintiff only addresses the public function test in his Brief in Opposition. (Doc. No. 30 at p. 10.)

government entity grant authority to a private security force; and (2) that the authority include at least one power exclusively reserved for the state. *See id.*

In *Romanski*, the Sixth Circuit considered whether a private casino security guard acted under the color of state law when she detained a patron for violating a casino policy. *Id*. The court noted that security guards typically have many powers commonly associated with police, such as the power to detain trespassers and shoplifters, the ability to carry a firearm, and the ability to use the firearm in self-defense, but that these powers are not exclusively held by the state, and therefore are not powers that make a private security guard a state actor. *Id.* at 637-38. The court went on to note that the security guard was also licensed under a state statute that granted her "the authority to arrest a person without a warrant as set forth for public peace officers." *Id.* at 638. The court held that this "plenary arrest power" exceeded the authority the common law bestows on private entities and individuals; it was power traditionally held exclusively by the police, therefore the guard was acting under the color of state law. *Id*.

The *Romanski* Court held that private security guards become state actors, for the purpose of Section 1983's public function test, only with some sort of state or municipal authorization of plenary police powers. *Id*., see also *Lindsey v. Detroit Entm't, LLC*, 484 F.3d 824, 829–30 (6th Cir.2007) (casino security guard did not act under color of state law where the guard was not licensed under state law and, thus, did not have plenary arrest authority). In cases where "the private [guards] have some police-like powers but not plenary police authority," including "cases in which a private institution's security employees have been dispatched

8

to protect the institution's interests or enforce its policies," the guards likely will not be state actors. *Romanski*, 428 F.3d at 637-38.

Here, Ealom offers no evidence that the Judson Defendants were endowed with plenary police powers and that they exercised those powers. Ealom has not carried his burden of demonstrating the Judson Defendants were licensed by the state with arrest authority. Therefore, the Court must proceed with the assumption that security personnel that interacted with Ealom were not so licensed. See *Lindsey,* 484 F.3d at 830 (stating it is plaintiff's burden, as the party who bears the burden of demonstrating that defendant acted under color of state law, to present evidence that security personnel were licensed by the state with arrest powers). Here, the Judson Defendants, who were not licensed with arrest authority, were not state actors when they "protect[ed] the institution's interests [and] enforced its policies." *Romanski*, 428 F.3d at 637-38. The Court finds the Judson Defendants did not act under the color of state law and therefore Ealom cannot maintain his Section 1983 claims. The Court GRANTS the Judson Defendants' Motion for Summary Judgment as to the constitutional claims.

### 2. State Law Malicious Prosecution

The Judson Defendants argue Ealom's state law malicious prosecution claim fails because of the statute of limitations, probable cause existed, and because there is no evidence of malice. (Doc. No. 25, at 9-10.) In his Brief in Opposition, Ealom details each of the counts Ealom was charged with and explains that he could not have committed each of the crimes. (Doc. No. 30, at 3-7.) He cites *King v. Harwood*, 852 F.3d 568 (6th Cir.2017) for the proposition that a grand jury indictment is not dispositive of the issue of probable cause. (*Id*. at p. 7.) In their Reply Brief, the Judson Defendants argue Ealom cannot prevail on this

claim because the Judson Defendants did not institute criminal proceedings against him, much less with malice. (Doc. No. 31, at 6.) They admit that Ealom did file the lawsuit within the statute of limitations. (*Id*.)

Under Ohio law, the tort of malicious prosecution requires proof of three essential elements: "'(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused.'" *Ghaster v. Rocky River*, 2013-Ohio-5587, 2013 WL 6730925, n.2 (8th Dist.); *Froehlich v. Ohio Dept. of Mental Health,* 114 Ohio St.3d 286, 871 N.E.2d 1159, 2007–Ohio–4161, 871 N.E.3d 1159, quoting *Trussell v. Gen. Motors Corp.,* 53 Ohio St.3d 142, 146, 559 N.E.2d 732 (1990). "[A]n indictment returned by a [g]rand [j]ury constitutes prima facie evidence of probable cause under Ohio law." *State v. Cremeans*, 2005-Ohio-928, 2, ¶ 10, 160 Ohio App. 3d 1, 4, 825 N.E.2d 1124, 1126, citing *State v. Nixon*, Lorain App. Nos. 00CA007638 and 00CA007624, 2001 WL 422885 (Apr. 25, 2001), quoting *Inmates' Councilmatic Voice v. Rogers*, 541 F.2d 633, 635 (C.A.6, 1976).

The first two elements are at issue in this case. First, Ealom offered no evidence that the Judson Defendants instituted the prosecution with malice. Second, probable cause is conclusively established by the grand jury indictment. *State*, 2005-Ohio-928, 2, ¶ 10. Ealom cites one case, *King v Harwood*, 852 F.3d 568 (6th Cir. 2017), in support of his contention that the grand jury indictment is "not dispositive of the issue of probable cause." (Doc. No. 30, at p. 7.) *King* is not instructive here. In *King*, Harwood, an investigator assigned to the case, allegedly gave false testimony before the grand jury, offered misleading evidence, and withheld exculpatory evidence. *King*, 852 F.3d at 575. King was indicted on the same day as the grand jury hearing. *Id*. King entered an *Alford* plea,[3] and she was sentenced to ten years in prison. *Id.*

---

[3] "[A]n '*Alford* plea' refers to a defendant who pleaded guilty but maintained that [she] is innocent." *Carr v. Louisville-Jefferson Cnty.*, 37 F.4th 389, 391 at fn. 1 (6th Cir. 2022), quoting *United States v. Tunning*,

10

She was subsequently exonerated after someone confessed and eventually filed suit against Harwood and others for malicious prosecution pursuant to Section 1983. *Id*. at 576. The *King* Court found there were genuine issues of material fact as to whether Harwood knowingly or recklessly set her prosecution in motion despite the absence of probable cause. *Id*. at 582-83.

The facts in this case are different and distinct from *King*. Here, there is no evidence, or even allegation, that the Judson Defendants made the decision to prosecute Ealom, nor did they provide misleading or false testimony at the grand jury hearing. As discussed, a grand jury indictment, as in this case, is prima facie evidence of probable cause. *State*, 2005-Ohio-928, 2, ¶ 10. Since there is no evidence to the contrary, the indictment of Ealom was "fair upon its face" and the hearing was free from false statements made by the Judson Defendants, unlike the indictment in *King*. Therefore, there is no genuine issue of material fact that probable cause was conclusively established pursuant to the indictment.

Ealom's state law malicious prosecution claim fails as a matter of law. Therefore, the Court GRANTS the Judson Defendants' Motion for Summary Judgment on the malicious prosecution claim.

**3. Respondeat Superior**

The Judson Defendants assert Ealom's claim for "respondeat superior or vicarious liability" fail because a private corporation cannot be held liable under Section 1983 unless the plaintiff proves the entity was a state actor. (Doc. No. 25, at p. 13.) The Judson Defendants state there must be a custom or policy that violated Plaintiff's constitutional rights, and that there must be more than one instance of potential misconduct. (*Id*.) The Judson Defendants assert Ealom has no evidence to support this claim. (*Id*. at 14.) In

---

69 F.3d 107, 110 (6th Cir. 1995); *see North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

11

his Brief in Opposition, Ealom addresses vicarious liability in a single sentence, stating the defendants "can be held liable for vicarious liability under the state malicious prosecution claim." (Doc. No. 30, at p. 10.) In their Reply Brief, the Judson Defendants reiterate their argument that Ealom cannot show any policy or custom of defendants caused any constitutional violation. (Doc. No. 31 at p. 10.)

In Ohio, "[g]enerally, an employer or principal is vicariously liable for the torts of its employees or agents under the doctrine of respondeat superior." *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 2009-Ohio-3601, ¶ 20, 122 Ohio St. 3d 594, 599, 913 N.E.2d 939, 943. The Ohio Supreme Court recognized "[t]he liability for the tortious conduct flows through the agent by virtue of the agency relationship to the principal. *If there is no liability assigned to the agent, it logically follows that there can be no liability imposed upon the principal for the agent's actions*." (Emphasis in original.) *Id*. at ¶ 22, citing *Comer v. Risko,* 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712; see also *Munson v. United States,* 380 F.2d 976, 979 , (C.A.6, 1967) (applying Ohio law and stating that "the master's sole liability depends upon a finding of liability on the part of the servant, so he cannot be held accountable where there is no such finding"). Therefore, there must be an underlying state-law tort for respondeat superior to attach. *See Richards v. Illinois Tool Works Inc.*, No. 1:24-CV-2111, 2025 WL 1295312, at *3 (N.D. Ohio May 5, 2025); *Virgil v. City of Newport*, 2018 WL 344986, at *18 (E.D. Ky. Jan. 9, 2018), *aff'd,* 745 F. App'x 618 (6th Cir. 2018); *ABO Staffing Servs., Inc. v. UnitedHealthcare Ins. Co.*, No. 22-CV-11696, 2024 WL 1256283, at *4 (E.D. Mich. Mar. 25, 2024). Because Ealom's state law claim for malicious prosecution fails, he cannot maintain a respondeat superior claim against employer Defendant Judson Park. Ealom's respondeat superior

claim fails as a matter of law. Therefore, the Court GRANTS the Judson Defendants' Motion for Summary Judgment on the respondeat superior claim.

## IV. CONCLUSION

For all the reasons set forth above, the Court GRANTS the Judson Defendants' Motion for Summary Judgment and dismisses all claims with prejudice.

Date:  August 22, 2025

    *s/ Jonathan Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge